MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@HankinPatentLaw.com
ANOOJ PATEL (SBN: 300297)
E-Mail: Anooj@HankinPatentLaw.com
**HANKIN PATENT LAW, APC**
11414 Thurston Cir.
Los Angeles, CA 90049
Telephone: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BOEHRINGER INGELHEIM INTERNATIONAL GmbH, a German limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:26-CV-10105<br><br>**COMPLAINT FOR:**<br>**1. BREACH OF CONTRACT;**<br>**2. COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);**<br>**3. TRADE SECRET MISAPPROPRIATION (18 U.S.C. § 1836; CAL. CIV. CODE § 3426 ET SEQ.);**<br>**4. VIOLATION OF 17 U.S.C. § 1202 (COPYRIGHT MANAGEMENT INFORMATION)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its Complaint against Defendants Boehringer Ingelheim International GmbH ("BI Germany," and together with its affiliates, "BI") and DOES 1 through 10, inclusive, alleges as follows:

**<u>JURISDICTION AND VENUE</u>**

1. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq., including 17 U.S.C. §§ 501 and 1202. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2. This action also arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the related state-law claims for breach of contract and for trade-secret misappropriation under the California Uniform Trade Secrets Act pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over BI, and venue is proper in this District. The April 22, 2017 Morisky Widget MMAS License fixes the authority and venue for any breach of the license in Los Angeles County, California, and the United States Federal Courts (§ II.H), and runs to Boehringer Ingelheim International GmbH and its affiliates, including Boehringer Ingelheim Taiwan Ltd. (§ II.D); and the March 31 Agreement fixes exclusive venue for disputes arising out of or relating to that Agreement, or its breach, in the state or federal courts in Los Angeles, California (¶ 11). BI's post-Effective-Date conduct was purposefully directed at the United States and caused harm in the United States: the ReAHEAD article was published in English by an American publisher (Elsevier), and the ReAHEAD record was posted and updated on the United States federal registry ClinicalTrials.gov, where Plaintiff resides and where the copyright at issue is registered and owned.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c)(3). A substantial part of the events giving rise to Plaintiff's claims—including the United States publication and the federal-registry posting and update of the infringing work—has had effect in this District, and each foreign Defendant may be sued in any judicial district under § 1391(c)(3).

## THE PARTIES

5. Plaintiff MMAS Research LLC is a Washington limited liability company in good standing. MMAS Research is the owner of United States Copyright Registration No. TX 8-816-517 for the "MMAS Research Widget Code" (the "Morisky Widget").

6. Steven Trubow is the principal of MMAS Research.

7. On information and belief, Defendant Boehringer Ingelheim International GmbH is a German limited liability company located at Binger Str. 173, 55216 Ingelheim am Rhein, Germany, and is the counterparty to the April 22, 2017 Morisky Widget MMAS License.

8. On information and belief, Boehringer Ingelheim Taiwan Ltd., a Taiwanese limited liability company located in Taipei, Taiwan, is wholly owned by Boehringer Ingelheim International GmbH and is an affiliate of that entity within the meaning of the April 22, 2017 license (§ II.D); its personnel are named authors of the ReAHEAD article and are recorded as having provided support for the ReAHEAD trial. Boehringer Ingelheim Taiwan Ltd. is not named as a Defendant in this action. Its conduct is alleged as the conduct of an affiliate for which BI Germany is answerable under the April 22, 2017 license, and as conduct undertaken under BI Germany's direction and control as sponsor of the ReAHEAD trial.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendants DOES 1 through 10, inclusive, are persons or entities whose true names and capacities are presently unknown to Plaintiff, and that each is in some manner responsible for the acts alleged herein. Plaintiff will seek leave to amend to allege their true names and capacities when ascertained.

## **INTRODUCTION**

10. This action concerns Boehringer Ingelheim's unauthorized reproduction, translation, and derivative alteration of the Morisky Widget MMAS-8, United States Copyright Registration No. TX 8-816-517, a computer program owned by Plaintiff MMAS Research LLC, in the publication of the ReAHEAD clinical trial after the parties had settled MMAS Research's earlier claims. The United States Court of Appeals for the Ninth Circuit has confirmed that MMAS Research never transferred that copyright and remains its registered owner. (Memorandum, *MMAS Research, LLC v. The Charité*, No. 23-55202 (9th Cir. Mar.

13, 2024) (unpublished; not precedent except as provided by Ninth Circuit Rule 36-3) (holding that the December 4, 2020 agreement "was never finalized" and that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget").)

11. The Morisky Widget is an original work of authorship under 17 U.S.C. § 103(b). Upon the functional and unprotectable base of the Morisky Medication Adherence Scales (MMAS-4 and MMAS-8), the Widget's authors—Donald Morisky, Steven Trubow, and Dustin Machi—created a new, protectable layer: original algorithmic logic that renders condition- and medication-specific assessments, decomposes non-adherence into its intentional and unintentional components, and maps item responses to those components and to the composite derived from them. Registration No. TX 8-816-517 identifies the MMAS-4 (TX 8-285-390) and MMAS-8 (TX 8-632-533) as previous registrations and preexisting material; the protected expression is the new authorship built upon that base, together with the MMAS-8 translations on deposit with the registration.

12. That protected expression is not confined to a screen. As administered, the Morisky Widget MMAS-8 produces a patient-facing assessment instrument that is the intended output of the copyrighted program and a fixation of its expressive selection, coordination, and arrangement. An instrument carried onto paper and administered to patients is a reproduction of the Widget's protected expression, whether or not the administering party ever logged into the software.

13. BI is a licensee of the Morisky Widget. Under the April 22, 2017 Morisky Widget MMAS License (Boehringer Ingelheim International GmbH, running to that entity "and its affiliates," including Boehringer Ingelheim Taiwan Ltd.) and the August 29, 2019 Morisky Widget MMAS License (Boehringer Ingelheim China), BI paid for and received on-site training and certification on the Morisky Widget and agreed that all MMAS tests must be administered, scored, and coded, without exception, through the Morisky Widget; that the Widget scoring and

coding criteria are trade secrets it was forbidden to divulge; that all MMAS translations are the exclusive property of MMAS Research; and that any manuscript would be submitted to MMAS Research before publication.

14. On March 31, 2025, MMAS Research and BI executed a Settlement Agreement (the "March 31 Agreement") that resolved MMAS Research's earlier litigation disputes, recited the ReAHEAD study among the "Accused Studies," and granted a release of contract, copyright, and trade-secret "Claims" up to and including the March 31, 2025 Effective Date, together with a California Civil Code § 1542 waiver of unknown claims. The March 31 Agreement expressly preserved BI's license rights that are perpetual with respect to the ReAHEAD study (¶ 3), and provided that, to the extent not in conflict with that Agreement, the terms of the Widget Licenses remain in effect (¶ 7).

15. This action concerns BI's conduct after the March 31, 2025 Effective Date. After that date, BI published the ReAHEAD article in the Journal of the Formosan Medical Association (DOI 10.1016/j.jfma.2025.10.002)—the manuscript having been received by the journal on April 27, 2025 and accepted on October 2, 2025—and, on May 15, 2025, updated the ReAHEAD record on the United States federal clinical-trials registry, ClinicalTrials.gov (NCT04532528). That conduct, being subsequent to the Effective Date, is not within the Claims the March 31 Agreement released "up to and including" that date, and it breached the surviving ReAHEAD license.

16. On the face of that post-Effective-Date publication, BI (a) scored and coded the MMAS-8 outside the Morisky Widget; (b) divulged, in the publication, the trade-secret scoring and coding criteria; (c) omitted the required MMAS Research attribution and legend and instead attributed the instrument to the retracted 2008 source; and (d) did not submit the manuscript to MMAS Research before publication.

17. The consequence falls on the cohort in which it matters most. The

ReAHEAD trial enrolled 873 patients with non-valvular atrial fibrillation who were newly prescribed dabigatran (Pradaxa®), an oral anticoagulant for stroke prevention, and used the MMAS-8 as its measure of adherence. BI reported that both study arms reached the maximum median MMAS-8 score at every visit, while its own data recorded that patients discontinued the stroke-prevention anticoagulant and that stroke and thromboembolic events occurred—precisely the deliberate, tolerability-driven discontinuation that a flat, gradient-stripped score is least able to surface.

18. MMAS Research brings this action to remedy the unauthorized reproduction and derivative use of its copyrighted work, BI's breach of the surviving ReAHEAD license, the divulgement of its trade secrets, and the false and removed copyright-management information, and to correct the resulting record.

## FACTS COMMON TO ALL CLAIMS

### A. The Morisky Widget and Copyright Registration No. TX 8-816-517

19. United States Copyright Registration No. TX 8-816-517, titled "MMAS Research Widget Code," was registered on December 3, 2019, and identifies MMAS Research LLC as the copyright claimant by transfer by written agreement, a date of creation of 2017, a first publication in the United States on March 18, 2017, and the authorship as a computer program. The registration identifies, as previous registrations and preexisting material, U.S. Copyright Registration Nos. TX 8-285-390 (2016, MMAS-4) and TX 8-632-533 (2018, MMAS-8).

20. Under 17 U.S.C. § 103(b), the Morisky Widget's protected expression is the new authorship contributed by its authors—not the preexisting scales. That new authorship consists of original algorithmic logic that renders condition- and medication-specific assessments, decomposes non-adherence into intentional and unintentional components, assigns item responses to those components and to the composite derived from them, and maps clinical parameters to that scoring through

the selection, coordination, and arrangement of the program. The MMAS-8 translations on deposit with the registration are likewise within its protected expression.

21. The Morisky Widget's scoring and coding criteria—the selection and arrangement by which item responses are mapped to the intentional and unintentional components of non-adherence and to the composite derived from them—are trade secrets of MMAS Research. They derive independent economic value from not being generally known to, and not being readily ascertainable by, others who could obtain economic value from their disclosure or use, and MMAS Research maintains their secrecy through reasonable measures, including limiting access to trained and certified licensees, requiring that scoring and coding be performed only within the Morisky Widget, and applying the criteria only through the software.

22. MMAS Research licenses the Morisky Widget only through a program that trains and certifies licensees, requires all MMAS assessments to be scored and coded within the Morisky Widget, and authorizes translations of the MMAS-8 only through that program.

**B. MMAS Research's Ownership of the Morisky Widget Has Been Adjudicated**

23. Whether MMAS Research owns the Morisky Widget has already been litigated. In *MMAS Research, LLC v. The Charité*, No. 2:21-cv-01406-MWF-JPR (C.D. Cal.), MMAS Research and Dr. Donald E. Morisky were named as co-plaintiffs. On November 7, 2022, Dr. Morisky filed a request for dismissal of his own claims with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i), executed by him personally on November 2, 2022 under penalty of perjury pursuant to 28 U.S.C. § 1746.

24. In that sworn filing, Dr. Morisky asserted that he was "the author and copyright owner" of the MMAS-4 and the MMAS-8, and that a December 4, 2020

agreement acknowledged him to be "the sole and exclusive owner of the federal copyrights … together with any related trademarks, copyrights, derivatives." He further asserted that those rights "include the Morisky Widget."

25. He asserted more particularly that "MMAS registered the Morisky Widget with the Copyright Office without my consent, and in violation of my now long-revoked original license to MMAS," and that "MMAS has no rights to or license in … the Morisky Widget copyrights." He described himself as "the sole and exclusive copyright owner of all the copyrights at issue in this matter." Each of those assertions rested on the December 4, 2020 agreement.

26. Sixteen months later, the United States Court of Appeals for the Ninth Circuit construed that same December 4, 2020 agreement and reached the opposite conclusion. The court held that the agreement "simply outlined terms MMAS and Dr. Morisky 'desire[d] to consent and agree to' sometime in the future" and "was never finalized," and that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." Memorandum, *MMAS Research, LLC v. The Charité*, No. 23-55202 (9th Cir. Mar. 13, 2024) (unpublished; not precedent except as provided by Ninth Circuit Rule 36-3). The panel reached that holding in rejecting the district court's conclusion that MMAS Research lacked standing to sue for copyright infringement, and affirmed the dismissal on other grounds.

27. The court further held that, because the December 4, 2020 agreement was a private contract that was never finalized, it "was not an abandonment of MMAS's right to sue." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). MMAS Research is, and at all relevant times has been, the owner of United States Copyright Registration No. TX 8-816-517 and of the Morisky Widget.

**C. The BI Licenses and the Widget-Only Mandate**

28. On April 22, 2017, BI Germany entered into the Morisky Widget MMAS License with MMAS Research (the "Germany License"), which granted BI Germany a license to use the Morisky Widget MMAS tests, on payment for a

perpetual license and for on-site training and certification in Ingelheim, Germany. The Germany License runs to "Boehringer Ingelheim International GmbH and its affiliates" (§ II.D).

29. The Germany License requires that MMAS results be entered into the Widget. Section II.B provides: *"After the completion of the 1160.188 and 1197.297 studies, Licensee must obtain permission to use MMAS paper or electronic questionnaires to administer, score, and report MMAS test results. When permission is granted, in each case, MMAS results must be entered into the Widget."*

30. The Germany License forbids divulging the coding and scoring criteria. Section II.E provides: *"MMAS CODING & SCORING criteria are trade secrets of Licensor and as such can NEVER be divulged in any publication, presentation, or website without written permission from Licensor."*

31. The Germany License requires manuscript pre-submission. Section III.A provides that a licensee *"must submit to MMAS Research all manuscripts that are being considered for publication to make certain that all copyright and trademark requirements are included,"* with a seven-calendar-day review period, and requires that the MMAS scale legend and required citations in Appendix I be included in all manuscripts and publications (§§ II.F, III.A).

32. The Germany License reserves MMAS Research's remedies for misconduct. Section II.G provides that, in case of scientific, administrative, or intellectual-property misconduct, the Licensor *"reserves the right to withdraw permission for use and to pursue all legal remedies to cure breaches of the license contract."* Section I.A provides that the Morisky Widget software, the MMAS-8 and MMAS-4, and "all ©MMAS Translations are the exclusive property of Licensor."

33. On August 29, 2019, Boehringer Ingelheim China entered into a further Morisky Widget MMAS License (the "China License"), under which BI China paid for training and certification in Shanghai and agreed, at Section 1, that *"All MMAS tests must be administered, scored and coded, without exception, through the*

*Morisky Widget,"* and, at Section 2, that the Morisky Widget Coding and Scoring criteria are trade secrets it is "forbidden from publicizing … in any form" without written consent. The China License fixes jurisdiction in the courts of Los Angeles, California (§ 7).

**D. The March 31, 2025 Settlement and the Surviving ReAHEAD License**

34. On March 31, 2025, MMAS Research and BI executed the March 31 Agreement, which recited the ReAHEAD study among the "Accused Studies" and released the parties' contract, copyright, and trade-secret "Claims" arising from conduct "up to and including" the March 31, 2025 Effective Date, together with a California Civil Code § 1542 waiver of unknown claims.

35. The March 31 Agreement did not terminate BI's license rights with respect to the ReAHEAD study. To the contrary, it expressly preserved BI's license rights that are perpetual with respect to the Fibronet, SPAF, SAC, China, and ReAHEAD studies (¶ 3), and provided that, to the extent not in conflict with that Agreement, the terms of the Widget Licenses remain in effect (¶ 7).

36. Accordingly, after the Effective Date, the surviving ReAHEAD license continued to bind BI, including its obligations to administer, score, code, and report all MMAS-8 tests only through the Morisky Widget; not to divulge the trade-secret scoring and coding criteria in any publication; to include the required MMAS citation and legend; to use only authorized translations; and to submit any manuscript to MMAS Research before publication.

37. This Complaint does not assert, revive, modify, or waive any Claim released by the March 31 Agreement for conduct up to and including the Effective Date, and it seeks no relief for any such released Claim. It is directed solely to BI's conduct after the Effective Date.

**E. BI's Post-Effective-Date Publication of the ReAHEAD Article and Registry Update**

38. On information and belief, the ReAHEAD article—Chih-Sheng Chu et

al., "The RElationship of Advanced Education and ADherence (ReAHEAD) on antithrombotic in younger patients with non-valvular atrial fibrillation in Taiwan," Journal of the Formosan Medical Association (DOI 10.1016/j.jfma.2025.10.002)—was received by the journal on April 27, 2025, accepted on October 2, 2025, and published as an article in press, each event occurring after the March 31, 2025 Effective Date.

39. On information and belief, personnel of Boehringer Ingelheim are named authors of the ReAHEAD article, and BI is recorded as having had the opportunity to review the manuscript, including for intellectual-property considerations.

40. On information and belief, on May 15, 2025—after the Effective Date—the ReAHEAD record on ClinicalTrials.gov (NCT04532528) was updated to state the MMAS-8 scoring and coding used in the trial, including that the MMAS-8 was assessed with adherence categories defined as scores of 0 to 5 (low), 6 to 7 (medium), and 8 (high), and that a "validated Chinese MMAS-8" was used.

41. The scoring-band language posted on the ReAHEAD registry record on May 15, 2025 is the same scoring-band language that the March 31 Agreement had recited as the scoring MMAS Research alleged to be incorrect. BI thus re-published, after the Effective Date, the very scoring the parties' settlement had identified, rather than correcting it.

### F. The Counterfeit Scoring and Coding on the Face of the Publication

42. On the face of the ReAHEAD article's Methods, the trial did not administer the validated MMAS-8 as licensed, but substituted a counterfeit scoring and coding method while attaching the MMAS-8 name and the retracted 2008 citation to the result. Items 1 through 7 were scored zero or one; item 8 was binarized—scored one for "never/rarely" and zero for each of "once in a while," "sometimes," "usually," and "all the time"—destroying the validated five-point resolution scored in quarter-point increments; and item 5, a reverse-scored item, was

subjected to the uniform forward rule.

43. Because item 8 was binarized, the achievable MMAS-8 totals were reduced to whole integers, and the "medium adherence" band of "6 to 7" could contain only the integers 6 or 7, substituting two integers for the seven validated quarter-point coordinates (6.25, 6.50, 6.75, 7.0, 7.25, 7.50, 7.75) that comprise the instrument's resolution in the diagnostically decisive middle band. This reading is corroborated on the face of the published results, in which every reported MMAS-8 value is a whole integer.

44. By publishing the item-level scoring and coding of the MMAS-8 in the ReAHEAD article, and by posting the scoring bands on the ClinicalTrials.gov record, BI divulged in a publication the MMAS coding and scoring criteria that the Germany License (§ II.E) designates as trade secrets and forbids divulging. MMAS Research imposed that same prohibition across the Boehringer Ingelheim group: the August 29, 2019 license with Boehringer Ingelheim China carries the same Widget-only mandate and the same bar on divulging those criteria (§§ 1, 2).

45. On information and belief, BI administered the MMAS-8 in the ReAHEAD trial in a Chinese-language translation that is a translation of the instrument on deposit with Registration No. TX 8-816-517, which BI was not authorized to prepare, reproduce, or distribute, and the instrument as administered is a matter to be established through production of BI's records.

**G. BI's Knowledge and the Genuine Method BI Possessed**

46. BI knew the validated Morisky Widget method and the correct output it produces. BI was trained and certified on the Morisky Widget under the Germany and China Licenses, and held its own Morisky Widget account. In connection with a Boehringer Ingelheim China study, the correct Morisky Widget output was documented in a data-transfer specification identifying MMAS Research as the data provider and defining the genuine method: item 8 taking five response values, a decimal (quarter-point) MMAS-8 score, and separate intentional and unintentional

sub-scores—the very features that the ReAHEAD publication stripped away.

47. BI thus possessed and knew the correct, validated method—a decimal, quarter-point score with an intentional/unintentional decomposition—and nonetheless, after the Effective Date, published a binarized, integer-only, decomposition-stripped method under the MMAS-8 name in the ReAHEAD article and on the federal registry.

48. BI further knew that the required copyright-management information for the Morisky Widget is the attribution to MMAS Research and the Appendix I legend, and that the 2008 source of the flat MMAS-8 summation had been retracted. The 2008 validation study (Morisky, Ang, Krousel-Wood & Ward, J. Clin. Hypertens. 2008;10:348–354) was retracted (DOI 10.1111/jch.14712), the journal having concluded, on independent statistical review, that the reported sensitivity and specificity were misleading.

**H. The Patient-Safety Consequence in a Stroke-Prevention Cohort**

49. The measurement defect carries a specific patient-safety consequence in this stroke-prevention cohort. ReAHEAD screened 897 and randomized 873 patients newly prescribed dabigatran for non-valvular atrial fibrillation—a population in which adherence to anticoagulant therapy bears directly on the risk of stroke, and in which recording a non-adherent patient as adherent removes the very signal a treating clinician needs in order to intervene.

50. On the face of the article, both study arms reached the maximum median MMAS-8 score at every visit, and the authors reported that 73.5% of subjects were already at high adherence at the initial assessment—so many that, in the authors' own words, the impact of the educational intervention could not be effectively demonstrated. A flat, gradient-stripped score thus logged near-perfect adherence across the cohort.

51. At the same time, BI's own data recorded that patients discontinued the stroke-prevention anticoagulant—dabigatran discontinuation being recorded as a

reason for withdrawal rather than as non-adherence—and that stroke and thromboembolic events occurred among the enrolled patients. The counterfeit flat score was least able to surface the deliberate, tolerability-driven discontinuation that the Widget's overall, intentional, and unintentional scoring would recover, and the misclassification occurred at the point of assessment and remains uncorrected in the patients' records.

52. The corrective measure is the one BI's own licenses already required: to re-score and re-code the ReAHEAD MMAS-8 responses through the Morisky Widget's overall, intentional, and unintentional scoring, on BI's own data, so as to recover on a record-by-record basis any deliberate discontinuation the counterfeit flat score concealed, and to correct the scientific record.

**I. United States Publication and the Reach of This Court**

53. On information and belief, the ReAHEAD article was published in English by an American publisher (Elsevier) and made available in the United States, and the ReAHEAD record was posted and updated on the United States federal clinical-trials registry, ClinicalTrials.gov. BI's post-Effective-Date reproduction, distribution, and public display of the infringing work, and the false and removed copyright-management information, occurred through and had effect in the United States.

**<u>FIRST CLAIM FOR RELIEF</u>**

**BREACH OF CONTRACT**

**(Against BI Germany)**

54. MMAS Research realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. The Germany License is a valid and enforceable contract between MMAS Research and BI Germany, binding BI Germany and its affiliates, including BI Taiwan (§ II.D). Its terms remained in effect after the March 31, 2025 Effective Date, as the March 31 Agreement preserved BI's perpetual ReAHEAD license rights

(¶ 3) and the continued effect of the Widget License terms (¶ 7).

56. MMAS Research performed all conditions, covenants, and obligations required of it under the Germany License, except those excused or prevented by BI's conduct.

57. After the Effective Date, BI breached the surviving ReAHEAD license by: (a) administering, scoring, coding, and reporting the ReAHEAD MMAS-8 outside the Morisky Widget, in breach of §§ I.A and II.B and the Widget-only requirement; (b) divulging the trade-secret MMAS coding and scoring criteria in the ReAHEAD article and on the ClinicalTrials.gov record, in breach of § II.E; (c) omitting the required MMAS scale legend and Appendix I citations, and using an unauthorized translated version, in breach of §§ II.F and III.A; and (d) failing to submit the ReAHEAD manuscript to MMAS Research before publication, in breach of § III.A.

58. Each of these breaches arose from BI's post-Effective-Date publication of the ReAHEAD article and its May 15, 2025 update of the ReAHEAD registry record, and each is outside the Claims released by the March 31 Agreement.

59. As a direct and proximate result of BI's breaches, MMAS Research has suffered general, direct, and consequential damages in an amount to be proven at trial, and is entitled to its remedies to cure those breaches, including under § II.G of the Germany License.

## **SECOND CLAIM FOR RELIEF**

## **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

**(In the Alternative to the First Claim, Against All Defendants)**

60. MMAS Research realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as though fully set forth herein.

61. MMAS Research is the owner of United States Copyright Registration No. TX 8-816-517 for the Morisky Widget. The registration is prima facie evidence of the validity of the copyright and of the facts stated in the certificate under 17

U.S.C. § 410(c), and MMAS Research's ownership has been confirmed by the Ninth Circuit in No. 23-55202.

62. The protected expression in the Morisky Widget consists of the original authorship contributed under 17 U.S.C. § 103(b)—the program's algorithmic logic and the selection, coordination, and arrangement of its scoring and coding—together with the MMAS-8 translations on deposit with the registration, and does not depend on any protectability of the preexisting MMAS-4 and MMAS-8 scales.

63. This claim is pleaded in the alternative to the First Claim for Relief. To the extent BI contends that the Widget Licenses were terminated by the March 31 Agreement notwithstanding ¶ 3, then BI held no license after the Effective Date, and BI's post-Effective-Date reproduction, translation, distribution, and public display of the Morisky Widget MMAS-8 in the ReAHEAD article and on ClinicalTrials.gov were without authorization and infringed Registration No. TX 8-816-517.

64. On information and belief, the Chinese-language MMAS-8 that BI administered and reported in the ReAHEAD publication is an unauthorized translation of the instrument on deposit with Registration No. TX 8-816-517, and BI's preparation, reproduction, and distribution of that translation infringed MMAS Research's exclusive right under 17 U.S.C. § 106(2) to prepare derivative works.

65. BI's acts of reproduction, distribution, and public display occurred through publication in the United States by a United States publisher and on the United States federal registry.

66. As a direct and proximate result of BI's infringement, MMAS Research has been damaged and is entitled to recover its actual damages and any additional profits of BI under 17 U.S.C. § 504(b), or, at its election, statutory damages under 17 U.S.C. § 504(c), and—to the extent the evidence establishes that the infringement was willful—enhanced statutory damages, together with injunctive relief under 17 U.S.C. § 502 and costs and attorneys' fees under 17 U.S.C. § 505.

## THIRD CLAIM FOR RELIEF

## TRADE SECRET MISAPPROPRIATION

## (18 U.S.C. § 1836; Cal. Civ. Code § 3426 et seq.) (Against All Defendants)

67. MMAS Research realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as though fully set forth herein.

68. MMAS Research possesses trade secrets in the Morisky Widget scoring and coding criteria, including the selection and arrangement by which item responses are mapped to the intentional and unintentional components of non-adherence and to the composite derived from them. These trade secrets relate to products and services used in, and intended for use in, interstate and foreign commerce.

69. MMAS Research has taken reasonable measures to keep these criteria secret, including limiting access to trained and certified licensees, requiring that scoring and coding be performed only within the Morisky Widget, imposing confidentiality and use restrictions by contract, and applying the criteria only through the software; and BI contractually acknowledged, in § II.E of the Germany License, that the criteria are trade secrets it was forbidden to divulge—the same acknowledgment Boehringer Ingelheim China gave in § 2 of the August 29, 2019 license, so that the obligation was understood and accepted across the Boehringer Ingelheim group. The criteria derive independent economic value from not being generally known to, or readily ascertainable by, others who could obtain economic value from their disclosure or use.

70. BI acquired the trade secrets under a duty to maintain their secrecy and to limit their use, and after the Effective Date used and disclosed them without consent by publishing the MMAS-8 scoring and coding criteria in the ReAHEAD article and on the ClinicalTrials.gov record. BI's use and disclosure were without authorization and in breach of the confidentiality and use restrictions under which BI acquired the criteria.

71. On information and belief, BI's misappropriation was willful and

malicious: BI possessed and knew the genuine, validated method, as documented in its own data-transfer records, and nonetheless published a departing method under the MMAS-8 name after settling MMAS Research's prior claims that had recited the same scoring.

72. As a direct and proximate result of BI's misappropriation, MMAS Research has suffered and will continue to suffer damages. MMAS Research is entitled to recover its actual loss and any unjust enrichment, or in the alternative a reasonable royalty, under 18 U.S.C. § 1836(b)(3) and California Civil Code § 3426.3; to injunctive relief under 18 U.S.C. § 1836(b)(3) and California Civil Code § 3426.2; and, upon proof of willful and malicious misappropriation, to exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3) and California Civil Code §§ 3426.3(c) and 3426.4.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF 17 U.S.C. § 1202

## (Copyright Management Information) (Against All Defendants)

73. MMAS Research realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as though fully set forth herein.

74. The attribution of the Morisky Widget to MMAS Research LLC, and the required MMAS scale legend and Appendix I citations, constitute copyright-management information within the meaning of 17 U.S.C. § 1202(c), conveyed in connection with copies of the Morisky Widget MMAS-8 and required by the Germany License (§§ II.F, III.A).

75. In violation of 17 U.S.C. § 1202(b), BI, after the Effective Date, removed or altered that copyright-management information by publishing and posting the Morisky Widget MMAS-8 without the required attribution to MMAS Research and without the required legend and citations, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement.

76. In violation of 17 U.S.C. § 1202(a), BI, after the Effective Date, provided and distributed false copyright-management information—attributing the instrument to the retracted 2008 source and describing it as a "validated Chinese MMAS-8"—knowingly and with the intent to induce, enable, facilitate, or conceal an infringement.

77. BI acted knowingly. BI possessed the genuine method and the correct attribution, as documented in its own records; the 2008 source had been retracted; and BI published and posted the false and stripped information after settling MMAS Research's prior claims.

78. MMAS Research is entitled to recover, at its election, its actual damages and any additional profits, or statutory damages of not less than $2,500 and not more than $25,000 for each violation, under 17 U.S.C. § 1203(c), together with costs and attorneys' fees under 17 U.S.C. § 1203(b), and to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MMAS Research LLC prays for judgment against Defendants as follows:

A. For MMAS Research's general, direct, and consequential damages for breach of contract, in an amount according to proof at trial;

B. For MMAS Research's actual damages and any additional profits of Defendants attributable to the infringement, or, at MMAS Research's election, statutory damages, under 17 U.S.C. § 504;

C. For MMAS Research's actual loss and any unjust enrichment, or in the alternative a reasonable royalty, and, upon proof of willful and malicious misappropriation, exemplary damages, under 18 U.S.C. § 1836(b)(3) and California Civil Code §§ 3426.3 and 3426.3(c);

D. For MMAS Research's actual damages and additional profits, or, at its election, statutory damages of not less than $2,500 and not more than $25,000 per violation, under 17 U.S.C. § 1203;

E. For preliminary and permanent injunctive relief restraining Defendants, and all persons acting in concert with them, from reproducing, translating, distributing, publicly displaying, administering, scoring, coding, or preparing derivative works of the Morisky Widget MMAS-8 or the Morisky Widget without authorization, and from further divulging the Morisky Widget scoring and coding criteria;

F. For an order requiring Defendants to take such steps as are necessary to correct the scientific record with respect to the scoring and coding reported in the ReAHEAD article and the ReAHEAD registry record, including re-scoring and re-coding the ReAHEAD MMAS-8 responses through the Morisky Widget;

G. For costs of suit and attorneys' fees as permitted by 17 U.S.C. §§ 505 and 1203(b), 18 U.S.C. § 1836(b)(3), and California Civil Code § 3426.4;

H. For prejudgment interest as allowed by law; and

I. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**HANKIN PATENT LAW, APC**

Dated: September 9, 2026 By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all issues so triable in this action.

**HANKIN PATENT LAW, APC**

Dated: September 9, 2026 By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**